# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CHAD DOWNS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-cv-00051-DGK |
| | ) |
| GARRY BUSH and RAY COUNTY, | ) |
| MISSOURI, | ) |
| | ) |
| Defendants. | ) |

## GRANTING SUMMARY JUDGMENT

This case arises from Plaintiff Chad Down's allegations that his civil rights were violated while he was detained at the Ray County, Missouri, jail on two separate occasions in 2019 and 2020. Plaintiff brings two identical counts against Defendants Ray County, Missouri ("Ray County") and former sheriff Garry Bush in his individual capacity ('Bush").

Now before the Court is Defendants' motion for summary judgment. ECF No. 51. Because Plaintiff cannot demonstrate the deprivation of a constitutional right, the motion is GRANTED.

### Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the

facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must nonetheless substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

**Factual Background**

With respect to the pending motion, the material undisputed facts are as follows.[1]

Plaintiff was detained[2] at the Ray County, Missouri Jail on two separate occasions while awaiting criminal trials. First, from September 5 to 10, 2019 (the "2019 detention"), and again from May 15 to 21, 2020 (the "2020 detention"). Bush was the elected sheriff of Ray County from 2011 to December 31, 2020, and he was the jail administrator during both detentions.

Plaintiff was placed in solitary confinement for one or two days during his 2019 detention and for most of his 2020 detention. (The parties do not say why.) Plaintiff claims he was not given liquids to drink while in solitary confinement. After the first or second day of solitary confinement in 2019, Plaintiff was placed in a general-population area and was given drinking

---

[1] The Court limited the facts to those that are undisputed and material to the pending summary judgment motion. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). For instance, the Court excluded many of Plaintiff's proposed facts surrounding his ex-mother-in-law as immaterial since conspiracy allegations are not raised in his Amended Complaint. *See, e.g.*, Pl.'s Proposed Facts Nos. 58–64, ECF No. 55. The Court also excluded legal conclusions, argument presented as fact, and proposed facts not properly supported by the record or admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). This includes legal conclusions presented by Plaintiff's retained expert. *See* Pl.'s Proposed Fact No. 65. However, the Court has included inferences from undisputed material facts and facts the opposing party has not controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). For instance, the Court included facts Plaintiff objected to without citing to particular parts of the record for support as required by Federal Rule of Civil Procedure 56(c)(1)(A). *See, e.g.*, Pl.'s Resp. to Dfs.' Proposed Facts Nos. 13, 14, 20, 21, 27, 30.

[2] The parties use the terms "detained" and "incarcerated" interchangeably throughout their briefing. Because the Eighth Circuit differentiates between pretrial detainees (Plaintiff) and convicted inmates, the Court refrains from using the terms "imprisoned," "incarcerated," and "inmate." *See, e.g.*, *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (recognizing difference between pretrial detainees and convicted inmates).

water in a pitcher. During his 2020 detention, Plaintiff experienced symptoms of dehydration and had to drink water from the toilet. Also during his 2020 detention, Plaintiff contends a jail worker told him Bush wanted him in a "dry cell" without liquids. The jail worker got this information from someone else, not Bush himself.

Plaintiff claims he was never released from solitary confinement for exercise, but also testified there was never a time he asked to exercise and was told no. During both detentions, Plaintiff had several meals on most days, although he did not like the quality of the food because some of it seemed to be powder-based or fake.

At all times relevant to both detentions, Plaintiff was on prescription medications for stress, anxiety, depression, and pain. Plaintiff told jail employees about his medications when he filled out the intake form for his 2020 detention. It is unclear whether Plaintiff told jail employees about his medications during his 2019 detention. Relatives brought Plaintiff's medications to the jail, but Plaintiff did not receive them, except for a brief period at the end of his detentions. It is unclear on what dates Plaintiff eventually received his medications. Plaintiff did not seek medical attention during either detention to address complications from the purported lack of medication, nor did he mention the circumstance to his physician until several months after the 2020 detention ended. What effects Plaintiff felt from the alleged deprivation of the medications were gone within a day or two of him resuming the medications. But Plaintiff also claims that since the detentions he has visited the doctor several time for increased symptoms (that he does not identify), has missed work due to pain, and has had right hip pain and a chronic cough.

A grievance procedure was outlined in the Inmate Handbook that Plaintiff received during his first detention, but Plaintiff never made a formal grievance about either detention.

Ray County is governed by three Ray County commissioners. Bush served under the authority and administration of the commissioners, who represent the interests of Ray County as the legal entity operating the jail. The commissioners set the jail's budget, while the sheriff was primarily in charge of the jail's daily operations. Bush, as sheriff, put the jail's cook in charge of the daily operations of the jail. If there was a problem, she would take care of it, or raise those problems with Bush.

The parties dispute whether the commissioners were involved in the jail's daily operations. Bush never received anything in writing from the commissioners with respect to the daily operation of the jail, and commissioner Robert King did not think the commissioners had any oversight responsibility with respect to the jail. For instance, according to King, forcing an inmate to sleep on the cell's concrete floor would be up to the sheriff. Commissioner Allen Dale stated the commissioners had knowledge of the jail's daily matters if there was a problem.

Regardless, Bush had no direct interaction with Plaintiff or his medications during either detention; he was not involved in decisions about Plaintiff's recreation time, nor was he directly or personally involved with Plaintiff's food. In fact, Bush did not know Plaintiff was among the seventy people in the jail during both detentions. Bush did not speak or otherwise communicate with Plaintiff during either detention. Plaintiff was not present when Bush spoke with anyone else, and Plaintiff did not overhear any conversations Bush had with other individuals. Plaintiff sued Bush because of his title as sheriff.

Plaintiff filed his Amended Complaint against Defendants in the Circuit Court of Ray County, Missouri, on January 20, 2023. On January 23, 2023, Defendants removed to this Court. Plaintiff's Amended Complaint alleges he was held in solitary confinement without reason and was deprived of the following: (1) a clean, orderly, and odor-free detention facility; (2) at least

4

three nutritionally adequate meals per day; (3) water and other beverages; (4) prescription medications; (5) activity outside his cell for one hour per day; and (6) the opportunity to use exercise areas once or twice per week. *See* Am. Compl. at 4–6, ECF No. 1-1. The Amended Complaint states this treatment "was inhumane and violated the United States Constitution, Federal and State Statutes, the Missouri Constitution and standards of the American Correctional Association." *Id.* at 4, 6. On November 28, 2023, Defendants moved for summary judgment.

## Discussion

Defendants argue—and Plaintiff does not dispute—that this is a pretrial detainee conditions of confinement case brought under 42 U.S.C. § 1983.[3] Thus, the Court does not address the single reference to an unidentified Missouri statute in Plaintiff's response. With that in mind, the Court rules as follows.

I. **Bush is Entitled to Summary Judgment on Plaintiff's Medication Claim.**

Plaintiff argues he did not receive his medications during both detentions, at least initially, and seeks to hold Bush responsible for this. Bush responds he is not liable for the handling of Plaintiff's medication by others. The Court agrees.

Because § 1983 does not support vicarious liability, Plaintiff "must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added). Plaintiff has not done so here. Plaintiff concedes Bush was not involved in the administration of his medication, and that Bush did not know Plaintiff was being detained and needed medication. *See Goldman v.*

---

[3] Aside from one conclusory remark to an unidentified Missouri statute, Plaintiff's response does not cite to or reference cases involving violations of the Missouri Constitution, Missouri statutes, or standards of the American Correctional Association. *See* Pl.'s Resp. at 13 (remarking Plaintiff's detention "constituted inhuman treatment and violated Missouri statute that all prisoners be humanly [sic] treated" without citing the statute or expounding on this remark). Plaintiff's response instead focuses exclusively on § 1983.

5

Case 4:23-cv-00051-DGK   Document 60   Filed 02/05/24   Page 5 of 9

*Forbus*, 17 F. App'x 487, 489 (8th Cir. 2001) (finding no basis for § 1983 claim where three-week medication delay was due to jail doctor's oversight, not the named defendant's oversight); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (dismissing § 1983 claim where plaintiff did not allege defendant "was personally involved in or had direct responsibility for incidents that injured [plaintiff]").

Bush also argues he is entitled to qualified immunity for this claim. "Qualified immunity shields a government official from suit under § 1983 if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity has two prongs, which the Court may consider in either order: "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Presson v. Reed*, 65 F.4th 357, 365 (8th Cir. 2023). A "defendant is entitled to qualified immunity unless the answer to both of these questions is yes." *Id.*

Here, Plaintiff has not demonstrated the deprivation of a constitution or statutory right. As a pretrial detainee, Plaintiff is protected under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *See Vaughn v. Greene Cnty.*, 438 F.3d 845, 850 (8th Cir. 2006). To establish a constitutional violation for "deliberate indifference" to his medical needs, Plaintiff must establish (1) "he suffered from an objectively serious medical need," and (2) Bush "knew of the need yet deliberately disregarded it." *Presson*, 65 F.4th at 366 (quotation omitted).

Even assuming Plaintiff suffered from an objectively serious medical need, Plaintiff has not established Bush knew of Plaintiff's need and deliberately disregarded it. As stated earlier, Bush was not involved in the administration of Plaintiff's medication, nor did he know Plaintiff

6

was being detained and needed medication. There is also no evidence any jail personnel informed Bush about Plaintiff's medications. *See Vaughn*, 438 F.3d at 851 (finding no deliberate indifference where the defendant sheriff had no personal interaction with plaintiff during his detention and did not know about plaintiff's medical complications preceding his death). Because the facts do not demonstrate the deprivation of a statutory or constitutional right, Bush is entitled to qualified immunity on Plaintiff's medication claim.

II.     **Plaintiff's Remaining Conditions of Confinement Claims are Waived.**

Defendants argue Plaintiff's remaining conditions of confinement claims—regarding cleanliness, food, drink, recreation/activity time, and solitary confinement—do not amount to constitutional or statutory violations. *See* Dfs.' Suggestions in Supp. at 14–18, ECF No. 52. Plaintiff does not address this issue in his response. In the Eighth Circuit, "failure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009). Thus, the Court grants summary judgment on Plaintiff's remaining conditions of confinement claims.

To the extent Plaintiff argues Bush conspired with Plaintiff's ex-mother-in-law to purposefully subject Plaintiff to inhumane conditions, the claim fails. *See* Pl.'s Resp. at 14–15, ECF NO. 55. Plaintiff did not raise, nor allude to, a civil conspiracy claim in his Amended Complaint, and the Court will not consider theories raised for the first time in summary judgment briefing. *See United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 833 F.3d 874, 880 (8th Cir. 2016) (affirming district court's refusal to consider theory not alleged in plaintiff's complaint); *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) (parties are not entitled "to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment."). Even if the Court did consider it, Plaintiff's

7

allegations are entirely speculative and not enough to overcome summary judgment. *See Mann*, 497 F.3d at 825 (requiring "more than mere speculation, conjecture, or fantasy").

### III.     Ray County is Entitled to Summary Judgment.

Ray County argues it is entitled to summary judgment because Plaintiff failed to establish Defendants had a custom or policy that caused his alleged injuries. Plaintiff responds that Defendants "had a custom and practice in which Ray County had no involvement with respect to the daily operations of the jail and treatment of inmates." Pl.'s Resp. at 12. But this theory was not included in Plaintiff's Amended Complaint, so it cannot be raised for the first time in summary judgment briefing. Even if the Amended Complaint contained such a theory, however, Plaintiff has failed to show how Ray County is liable under § 1983.

"A claim against a county is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice[,]" and that "custom, policy, or practice . . . [is] the moving force behind the violation." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 820 (8th Cir. 2012) (cleaned up and internal quotations omitted). "[P]laintiff must show not only that a policy or custom existed, and that it was causally related to [Plaintiff's] injury, but that the policy itself was unconstitutional." *Id*. Plaintiff may also "establish municipal liability on the theory that a *facially lawful* municipal action has led an employee to violate [Plaintiff's] rights . . . . [by] demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007) (quotation omitted).

Plaintiff provides no analysis and cites no caselaw supporting his assertion that Ray County's custom and practice caused Plaintiff's alleged injury or was itself unconstitutional, or that Ray County acted with deliberate indifference. And as this Court previously told Plaintiff, it

8

is not the Court's job to research the law for the parties. *See* Order Granting Mot. to Dismiss Count I at 3, ECF No. 37 (citing *United States v. Guzman-Tlaseca*, 546 F.3d 571, 578 (8th Cir. 2008)). Plaintiff's conclusory arguments are not enough to survive a motion for summary judgment. *See Mann*, 497 F.3d at 825. Accordingly, Ray County is entitled to summary judgment.

## Conclusion

Defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date: February 5, 2024            /s/ Greg Kays
                                                 GREG KAYS, JUDGE
                                                 UNITED STATES DISTRICT COURT